# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------X
CINZIA LETTIERI,                                    Civil Case No.:

                               Plaintiff,          Plaintiff designates
                                                   NEW YORK COUNTY
        -against-                                 as the place of trial.

ANTI-DEFAMATION LEAGUE FOUNDATION, d/b/a          **SUMMONS**
THE ANTI-DEFAMATION LEAGUE, and
ANTI-DEFAMATION LEAGUE,                           Plaintiff Demands a
                                                  Trial by Jury
                               Defendants.
-------------------------------------------------------------------------X

**TO THE ABOVE-NAMED DEFENDANTS:**

       **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve upon Plaintiff's attorneys, DEREK SMITH LAW GROUP, PLLC, at the address stated below, a copy of your answer within 20 days after the service of this Summons, exclusive of the day of service, or within 30 days after the service is complete if this Summons is not personally delivered to you within the State of New York; and in the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated:     November 18, 2022
            New York, New York

                                         DEREK SMITH LAW GROUP, PLLC
                                         Attorneys for Plaintiff

                                         _____
                                         Zack Holzberg, Esq.
                                         One Penn Plaza, Suite 4905
                                         New York, NY 10119
                                         (212) 587-0760

TO:

ANTI-DEFAMATION LEAGUE FOUNDATION
VIA SECRETARY OF STATE
ONE COMMERCE PLAZA

99 WASHINGTON AVENUE
ALBANY, NY 12231

ANTI-DEFAMATION LEAGUE
VIA SECRETARY OF STATE
ONE COMMERCE PLAZA
99 WASHINGTON AVENUE
ALBANY, NY 12231

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X
CINZIA LETTIERI,

                     Plaintiff,

-against-

ANTI-DEFAMATION LEAGUE FOUNDATION, d/b/a
THE ANTI-DEFAMATION LEAGUE, and
ANTI-DEFAMATION LEAGUE,

                     Defendants.
------------------------------------------------------------------X

Civil Case No.:

Plaintiff designates
NEW YORK COUNTY
as the place of trial.

**COMPLAINT**

Plaintiff Demands a
Trial by Jury

Plaintiff, CINZIA LETTIERI (hereinafter referred to as "Plaintiff"), by and through her attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants ANTI-DEFAMATION LEAGUE FOUNDATION d/b/a THE ANTI-DEFAMATION LEAGUE, and ANTI-DEFAMATION LEAGUE (hereinafter collectively referred to as "ADL") (hereinafter collectively referred to as "Defendants"), upon information and belief, as follows:

### NATURE OF THE CASE

1. Plaintiff complains of Defendants pursuant to the laws of the State of New York and the New York City Administrative Code ("NYCHRL"), seeking declaratory and injunctive relief and damages to redress the injuries that Plaintiff suffered as a result of, *inter alia*, race discrimination and pregnancy discrimination, together with a hostile work environment, retaliation, and unlawful termination by Defendants.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to New York Constitution, Article VI, § 7(a) and CPLR § 301 and because Defendants are domiciled in the State of New York.

3. Venue is proper in New York County pursuant to CPLR § 503 because Defendants resided in New York County at the time Plaintiff commenced this action.

## PARTIES

4. Plaintiff CINZIA LETTIERI is seeking damages to redress the injuries she has suffered as a result of being discriminated against, harassed, and retaliated against by ADL on the basis of her race and family status/pregnancy status (attempting to conceive).

5. Multiple federal courts have held that, as a matter of law, an employee's allegations that she notified her employer that she was trying to become pregnant, and was fired as a result, are sufficient to state a claim for pregnancy discrimination. See, e.g., *Dantuono v. Davis Vision, Inc. et al.*, No. 07 Civ. 2234 (TCP), 2009 WL 5196151, at *7 (E.D.N.Y. Dec. 29, 2009) (collecting citations).

6. Plaintiff is an individual Caucasian woman residing in the State of Connecticut, County of Middlesex.

7. At all times material, Defendant ANTI-DEFAMATION LEAGUE FOUNDATION is a domestic not-for-profit corporation existing under the laws of the State of New York that does business in the State of New York.

8. At all times material, Defendant ANTI-DEFAMATION LEAGUE is a foreign not-for-profit corporation existing under the laws of the District of Columbia that does business in the State of New York.

9. At all times material, Defendants ANTI-DEFAMATION LEAGUE FOUNDATION and ANTI-DEFAMATION LEAGUE (collectively "ADL") jointly employed Plaintiff.

10. Per its website, the ADL's mission includes "fight[ing] all forms of hate" and "delivering anti-bias education."

## MATERIAL FACTS

11. In or around April 2019, Plaintiff became engaged to her fiancé. At the time, Plaintiff was 38 years old, and they discussed the importance of starting a family as soon as possible. In fact, Plaintiff and her fiancé decided that they would try to become pregnant even prior to their wedding.

12. In or around May 2019, Plaintiff began taking prenatal vitamins and the couple began trying to conceive a child.

13. In or around summer 2019, ADL hired Plaintiff to work at their office located in New York City.

14. At the time, Plaintiff was living in Connecticut and began taking steps to relocate to New York City.

15. At all times material, ADL's employee NICOLA STRAKER ("STRAKER") was and is the ADL's Education Director.

16. At all times material, STRAKER held supervisory authority over Plaintiff with regard to her employment.

17. In September 2019, Plaintiff relocated to New York City to begin working as an Associate Education Director under STRAKER's supervision.

18. Upon information and belief, the decision to hire Plaintiff was made by STRAKER, together with ADL's Albany-based Education Director, Beth Martinez ("MARTINEZ") and ADL's Director of Professional Development and Regional Support, National Education Team, Dave Reynolds ("REYNOLDS") (who is no longer affiliated with ADL).

19. In November 2019, Plaintiff went on a work-related trip with MARTINEZ. During the course of this trip, Plaintiff and MARTINEZ discussed their families. Plaintiff informed MARTINEZ that she was getting married in August 2020 and hoped to start a family. Moreover,

Plaintiff informed MARTINEZ that due to her age (Plaintiff was now 39 years old at the time) she had concerns as to whether she would have issues becoming pregnant. Plaintiff informed MARTINEZ that she and her fiancé were trying to get pregnant as soon as possible, even prior to their wedding.

20. Around the same time, in or around November 2019, Plaintiff informed STRAKER and her coworkers that she planned to marry later that year and was actively trying to become pregnant.

21. After Plaintiff's upcoming marriage and family plans became known, STRAKER began asking coworkers about Plaintiff's family status and making false and disparaging comments to the effect that "all Cinzia does in the office is plan her wedding."

22. STRAKER discriminated against Plaintiff on the basis that she was trying to become pregnant.

23. At all times material, STRAKER treated Plaintiff less well on the basis that she was attempting to become pregnant.

24. In or around December 2019, Plaintiff asked STRAKER to refrain from making these discriminatory and unprofessional comments.

25. Plaintiff engaged in protected activity by complaining about her supervisor's discriminatory remarks.

26. Throughout the course of her employment, STRAKER discriminated against Plaintiff on the basis of her family/pregnancy status (married, attempting to conceive a child).

27. In or around December 2019, Plaintiff spoke with Defendant's Regional Operations Director, ALEXANDER ROSEMBERG ("ROSEMBERG"), as well as Defendant's employee, KELLIANNE HOLLAND ("HOLLAND"), regarding her wedding and desire to become pregnant as soon as possible. ROSEMBERG informed Plaintiff that since her fiancé (now husband) is

Jewish, it would be prudent to convert to Judaism so that Plaintiff's children would be considered Jewish. Moreover, while Plaintiff expressed excitement for her wedding, she stated that getting pregnant took precedence given her age.

28. While working at ADL, Plaintiff openly discussed the fact that she was attempting to become pregnant, and this was well-known among her colleagues and supervisors.

29. In addition to STRAKER treating Plaintiff less well on the basis that she was trying to become pregnant, STRAKER (who is African-American) consistently treated Plaintiff less favorably than her African-American coworker on the basis that Plaintiff is Caucasian.

30. By way of example only, ADL's employee, HOWLATU SOWE ("SOWE") (who is African-American) consistently underperformed Plaintiff. As a result of SOWE's poor performance, Plaintiff and HOLLAND (who is also Caucasian) often needed to work harder and perform SOWE's job for her.

31. On or about January 15, 2020, Plaintiff and HOLLAND complained to STRAKER regarding SOWE's performance issues. STRAKER responded that they needed to help SOWE "get over her learning curve."

32. As a result of STRAKER discriminating against Plaintiff on the basis of her race, Plaintiff complained to Defendant's employee, KIRA SIMON ("SIMON") (SIMON is also Caucasian). Plaintiff informed SIMON that she felt STRAKER targeted Plaintiff on the basis of her race.

33. Notably, SIMON previously worked under STRAKER's supervision. SIMON empathized with Plaintiff's complaint and revealed that she also felt that STRAKER treated her less well than her African-American counterpart. SIMON advised Plaintiff to look into getting out from under her (STRAKER) as soon as possible (just as SIMON had done).

34. In retaliation for Plaintiff's complaints of disparate treatment based on her race, STRAKER

began assigning Plaintiff work that was beyond the scope of her duties/responsibilities. By way of example only, STRAKER delegated certain training sessions in New Jersey to Plaintiff, despite STRAKER'S own designation as the staffer responsible for New Jersey-based trainings.

35. In particular, in or around late December 2019, STRAKER assigned Plaintiff to conduct a very large training (with 240 attendees) for February 3, 2020, that should have been conducted by STRAKER.

36. In addition to performing poorly, SOWE also had issues with respect to her attendance. SOWE often left the office for hours at a time, her whereabouts unknown. Meanwhile, STRAKER insisted that Plaintiff be in the office at all times.

37. STRAKER subjected Plaintiff to adverse employment actions in retaliation for her complaints of racial discrimination.

38. By way of example only, in or around December 2019, Plaintiff asked STRAKER if she could work remotely on Christmas Eve. STRAKER denied Plaintiff's request and instructed Plaintiff to use one of her vacation days. Coincidentally, shortly after Plaintiff's conversation with STRAKER, STRAKER's supervisor, EVAN BERSTEIN ("BERSTEIN"), sent an email to all staff members instructing them to work from home on Christmas Eve. Despite BERSTEIN's, email, STRAKER still insisted that Plaintiff use one of her vacation days.

39. STRAKER knew that Plaintiff was saving her vacation time to use in connection with her wedding. STRAKER retaliated against Plaintiff by forcing her to use her vacation time unnecessarily.

40. On or about December 31, 2019, STRAKER acknowledged that Plaintiff requested time off on December 24, 2019, for religious and cultural purposes. STRAKER told Plaintiff to use a vacation day, even after the office was told to work from home by Regional Director BERSTEIN.

Meanwhile, SOWE a practicing Muslim, was given constant religious and cultural accommodations for prayer time throughout the day, even during important meeting times and accommodated religious holidays to work remotely without using vacation hours.

41. Moreover, STRAKER informed Plaintiff that SOWE is compensated or given hours off the following day(s) where she has trained beyond normal business hours.

42. On or about January 8, 2020, Plaintiff asked STRAKER to be compensated/given hours off for staying two hours past business hours for a training. STRAKER replied that she will get back to Plaintiff, but stated that time might not be given back to her and that it is part of the job, "everyone works late."

43. STRAKER subjected Plaintiff to a hostile work environment on the basis of her race.

44. In or around January 2020, Plaintiff met with her mentor, KIESHA EDGE ("EDGE"). During the course of Plaintiff's conversation with EDGE, EDGE mentioned that ADL was making some personnel cuts due to a reduction in funding from donors, as well as restructuring. Nevertheless, despite the anticipated layoffs, EDGE informed Plaintiff that she was not going to be included in the layoffs and had nothing to worry about. In fact, EDGE indicated that she was impressed with Plaintiff's performance and encouraged Plaintiff to apply for a position with ADL's national team (with EDGE's support).

45. Nevertheless, on or about January 27, 2020, Plaintiff was called into the Human Resources office and, in the presence of STRAKER and ADL's Human Resources Specialist, CINDY SCHWARTZ ("SCHWARTZ"), given the choice to resign or be terminated two weeks later.

46. Plaintiff asked why she was being forced to resign. STRAKER informed Plaintiff that she was terminated for alleged "poor performance."

47. Plaintiff was never put on a performance review or performance improvement plan as the

ADL's Employee Handbook recommends, nor verbally reprimanded or coached about her performance, even informally.

48. Plaintiff reached out to EDGE to discuss her unlawful termination. Notably, EDGE indicated that she was shocked, because in a recent conversation STRAKER had mentioned that Plaintiff was doing a "great job," and never mentioned that she was considering termination.

49. Moreover, Plaintiff spoke with a member of ADL's team in Albany, NY, KIERAN COOPER ("COOPER") regarding her termination. COOPER worked closely with MARTINEZ and informed Plaintiff that the reasons proffered by ADL were untrue.

50. Further, during Plaintiff's time at the ADL, up until the meeting where her performance was criticized as "poor," Plaintiff had been given ever-increasing responsibilities and assignments.

51. Notably, SOWE never did get over her learning curve, and as of Plaintiff's final days in the office, SOWE'S performance and work ethic continued to be subpar. However, upon information and belief, SOWE was never reprimanded, much less forced to resign.

52. Defendants discriminated against Plaintiff on the basis of her race, family status/pregnancy status (attempting to conceive).

53. Defendants retaliated against Plaintiff for engaging in protected activity by complaining about STRAKER's unlawful comments and conduct.

54. In light of these facts, and genuinely confused by the claim that her performance was poor, Plaintiff demanded examples of her poor performance.

55. "Poor performance" was a demonstrably false basis for Plaintiff's termination, and a pretext for unlawful discrimination and retaliation.

56. In fact, the very next day STRAKER sent Plaintiff to the United Jewish Appeal (UJA) to solicit a large grant, an important and sensitive assignment. Plaintiff ably performed the

assignment, and the day after Plaintiff's presentation, the UJA invited the ADL to submit a formal proposal for a multi-year grant.

57. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

58. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continued to suffer severe emotional distress.

59. As a result of Defendants' unlawful and discriminatory conduct, Plaintiff has endured unwarranted financial hardship.

60. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional distress.

61. Plaintiff claims constructive and/or actual discharge and also seeks reinstatement.

62. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

63. Plaintiff claims alternatively that she is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

64. As a result of Defendants' actions, Plaintiff claims further aggravation, activation, and/or exacerbation of her preexisting conditions.

65. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendants, jointly and

severally.

66. The above are just some examples of the discriminatory, hostile, and retaliatory environment to which Defendants subjected Plaintiff.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### NEW YORK STATE LAW
### (AGAINST ALL DEFENDANTS)

67. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

68. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

69. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her race, marital status, impending pregnancy, and subjecting Plaintiff to a hostile work environment.

70. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

71. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A SECOND CAUSE OF ACTION
### FOR RETALIATION UNDER
### NEW YORK STATE LAW
### (AGAINST ALL DEFENDANTS)

72. Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

73. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

74. Defendants engaged in an unlawful discriminatory practice by retaliating, suspending, and otherwise discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful practices of Defendants.

75. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law § 296.

76. Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against Plaintiff.

77. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (AGAINST ALL DEFENDANTS)

78. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

79. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

80. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against the Plaintiff because of Plaintiff's race, marital status and impending pregnancy, together with subjecting Plaintiff to a hostile work environment based on the same.

81. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code.

82. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

83. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

84. The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer, . , to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter."

85. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1) (e) by discriminating and retaliating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of her employer.

86. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code.

87. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

88. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

89. Section 8-107(19), entitled Interference with protected rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

90. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

91. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

92. Section 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take

immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

93. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated:  New York, New York
        November 18, 2022

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff*

Zack Holzberg, Esq.
One Penn Plaza, Suite 4905
New York, NY 10119
(212) 587-0760