UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CINZIA LETTIERI,

Plaintiff,

-v-

ANTI-DEFAMATION LEAGUE FOUNDATION, *d/b/a*
THE ANTI-DEFAMATION LEAGUE,
ANTIDEFAMATION LEAGUE, *and* NICOLA STRAKER,

Defendants.

22 Civ. 9889 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion to dismiss claims, by a former employee, of workplace

discrimination (including based on a hostile work environment) and retaliation.

Cinzia Lettieri sues her former employer, the Anti-Defamation League ("ADL"), and her

supervisor, Nicola Straker (collectively, "defendants") under Title VII of the 1964 Civil Rights

Act ("Title VII"), as amended by the Pregnancy Discrimination Act, 28 U.S.C. § 1367, and

similar New York state and city laws. She brings 10 claims. Two, against ADL only, are under

Title VII: for discrimination (on the basis of her race and impending pregnancy) and retaliation.

Three, against both defendants, are under the New York State Human Rights Law ("NYSHRL"),

N.Y. Exec. Law §§ 290 *et seq.*: for discrimination (on the basis of her race, marital status, and

impending pregnancy), retaliation, and aiding and abetting. Five, against both defendants, are

under the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-502 *et

seq.*: three for discrimination[1]; and one each for retaliation and aiding and abetting.

---

[1] As sorted by Lettieri, these are for: (1) discrimination and hostile work environment, N.Y.C.
Admin. Code § 8-107(1)(e); (2) "[i]nterference with protected rights," *id.* § 8-107(19); and

1

For the foregoing reasons, the Court grants defendants' motion to dismiss in full.

## I.   Background[2]

### A.   Factual Background

Lettieri is a white woman. *See* Dkt. 12 ("Amended Complaint" or "AC") ¶ 10. ADL is a foreign nonprofit corporation operating under the laws of the District of Columbia and doing business in New York State. *Id.* ¶ 11. ADL's self-described mission is "fight[ing] all forms of hate" and "delivering anti-bias education." *Id.* ¶ 14. Nicola Straker ("Straker") was ADL's education director and Lettieri's supervisor at all relevant times. *Id.* ¶¶ 15–16. Straker is Black. *Id.* ¶ 33.

In or around April 2019, Lettieri, then age 38, became engaged to be married. *Id.* ¶ 17. A month later, she began taking prenatal vitamins as part of the couple's efforts to conceive a child. *Id.* ¶ 18. In Summer 2019, ADL hired Lettieri to work at its New York City office. *Id.* ¶ 19. Straker—along with non-parties Beth Martinez and Dave Reynolds, who, respectively, were ADL's Albany-based education director and director of professional development and regional support—made the decision to hire Lettieri. *Id.* ¶ 22.

In November 2019, Lettieri went on a work-related trip with Martinez. *Id.* ¶ 23. During the trip, Lettieri and Martinez discussed their families, and Lettieri disclosed her desire to marry and conceive, but that she worried she would have difficulty conceiving due to her age. *Id.* Lettieri told Martinez she and her fiancé were trying to conceive as soon as possible. *Id.* In or around the same month, Lettieri told Straker and her coworkers of her upcoming wedding and

---

(3) employer liability for discriminatory conduct by an employee, agent, or independent contractor, *id.* § 8-107(13). *See* AC ¶¶ 96–99, 111–16.

[2] The summary is drawn from the amended complaint. For the purposes of resolving the motion to dismiss, the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiffs. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

efforts to conceive. *Id.* ¶ 25. After learning of Lettieri's personal plans, Straker asked coworkers about Lettieri's family status and made "comments to the effect that 'all [Lettieri] does in the office is plan her wedding.'" *Id.* In or around December 2019, Lettieri asked Straker to stop making such comments. *Id.* ¶ 28.

Soon thereafter, Lettieri spoke to ADL's regional operations director, Alexander Rosemberg, and another employee, Kellianne Holland, about her wedding and desire to become pregnant. *Id.* ¶ 31. Rosemberg told Lettieri that, since her fiancé was Jewish, it would be prudent for her to convert to Judaism so that her future children would be considered Jewish. *Id.*

Around December 2019, Lettieri asked to work remotely on Christmas Eve. *Id.* ¶ 42. Straker denied the request and told Lettieri she would have to use a vacation day to do so. *Id.* ¶¶ 42, 44. Shortly thereafter, Straker's supervisor, Evan Bernstein, sent an email to the office that instructed all staff members to work remotely on December 24. *Id.* ¶ 42. After Bernstein's email, Straker continued to "insist" that Lettieri use a vacation day in response to her request for "time off."[3] *Id.* ¶ 44. Straker did so knowing that Lettieri was saving her vacation days to use for her wedding. *Id.* ¶ 43. On or around December 31, 2019, Straker acknowledged that Lettieri had requested time off for religious and cultural purposes. *Id.* ¶ 44.

Although Straker "insisted" Lettieri be in the office "at all times," a Black coworker, Howlatu Sowe, whose performance was poor, "often left the office for hours at a time, her whereabouts unknown." *Id.* ¶ 40. A practicing Muslim, Sowe was frequently accommodated for her daily prayers and religious holidays without having to use vacation days. *Id.* ¶ 44. The AC alleges that Sowe "had issues with respect to her attendance." *Id.* ¶ 40.

---

[3] The Amended Complaint refers to a single request, but describes it variously as a request to work remotely, AC ¶ 42, and a request for "time off," *id.* ¶ 44.

Straker also told Lettieri that Sowe was compensated or given time off following days where she worked beyond normal business hours. *Id.* ¶ 45.  On about January 8, 2020, Lettieri asked Straker to be compensated or given time off for staying two hours past business hours to perform a training. *Id.* ¶ 46.  Straker replied that she would "get back" to Lettieri, but that the time might not be compensated because "everyone works late." *Id.*

Around January 15, 2020, Lettieri and Holland (who is also white) complained to Straker about Sowe's performance. *Id.* ¶¶ 34–35.  Lettieri felt that Sowe "consistently underperformed" Lettieri, and that Lettieri needed to work harder to compensate for Sowe's poor performance. *Id.* ¶ 34.  Straker responded that Lettieri and Holland "needed to help Sowe to 'get over her learning curve.'" *Id.* ¶ 35.

At an unspecified later date, Lettieri told another ADL employee, Kira Simon (who is also white and whom Straker previously supervised) that Straker was discriminating against Lettieri on the basis of her race. *Id.* ¶¶ 36–37.  Simon "empathized" with Lettieri; stated she, too, felt Straker had treated her less well than her Black counterpart; and advised Lettieri to find a different supervisor as soon as possible. *Id.* ¶ 37.

The AC alleges that, "[i]n retaliation for [Lettieri's] complaints of disparate treatment based on her race," Straker "began assigning [Lettieri] work that was beyond the scope of her duties/responsibilities"—specifically, "delegating certain training sessions in New Jersey" that Straker should have conducted to Lettieri. *Id.* ¶ 38.  In late December 2019, Straker assigned Lettieri to conduct a large training on February 3, 2020 that "should have been conducted by Straker." *Id.* ¶ 39.

In around January 2020, Lettieri met with Kiesha Edge. *Id.* ¶ 48.  Edge was Lettieri's "mentor"; the AC does not identify Edge's role at ADL. *Id.*  Edge told Lettieri ADL would be

4

making personnel cuts due to reduced funding from donors and internal restructuring, but assured Lettieri she would not be laid off. *Id.* Edge stated she was impressed with Lettieri's performance and encouraged her to apply for a position with ADL's national team. *Id.*

On January 27, 2020, Lettieri was called into ADL's human resources ("HR") office and, in the presence of Straker and HR Specialist, Cindy Schwartz, was given the choice to resign or be terminated two weeks later.[4] *Id.* ¶ 49. In response to Lettieri's request to know the reason for her termination, Straker stated that it was for "poor performance." *Id.* ¶ 50. Lettieri, however, had never been given a performance review or performance improvement plan as recommended by ADL's employee handbook, nor verbally reprimanded or coached about her performance. *Id.* ¶ 51. The day after this meeting, Straker sent Lettieri to the United Jewish Appeal ("UJA") to solicit a large grant—"an important and sensitive assignment." *Id.* ¶ 60. As a result of Lettieri's presentation, the UJA invited the ADL to submit a formal proposal for a multiyear grant. *Id.*

Lettieri later spoke to Edge about her termination. *Id.* ¶ 52. Edge "indicated that she was shocked" at the news. *Id.* Edge stated that Straker had described Lettieri as doing a "great job" and had never mentioned possible termination. *Id.* Lettieri also contacted Kieran Cooper, an employee in ADL's Albany office, about her termination. *Id.* ¶ 53. Cooper worked closely with Martinez and indicated to Lettieri that the reasons proffered for her termination were untrue. *Id.* Sowe "never did get over her learning curve," but was neither reprimanded nor forced to resign. *Id.* ¶ 55.

---

[4] The AC does not allege whether Lettieri chose to resign or waited two weeks and was terminated. The Court assumes, *arguendo*, that she was terminated.

### B.    Procedural Background

On November 18, 2022, Lettieri filed the Complaint in New York State Supreme Court in Manhattan, bringing claims under the NYSHRL and NYCHRL of discrimination and retaliation. Dkt. 1-1.[5]

On November 21, 2022, defendants filed a notice of removal.  Dkt. 1.  On November 28, 2022, defendants moved to dismiss, Dkt. 6, and filed a memorandum of law, Dkt. 7, and exhibits, Dkt. 8, in support.  On November 30, 2022, the Court ordered Lettieri to amend the Complaint or oppose the motion to dismiss, and notified her that a further opportunity to amend would not ordinarily be granted.  Dkt. 11.

On December 19, 2022, Lettieri filed the AC, the operative complaint here, which added claims under Title VII.  Dkt. 12.  On January 3, 2023, defendants again moved to dismiss, Dkt. 13, and filed a memorandum of law, Dkt. 14 ("Mem."), and exhibits, Dkt. 15, in support.  On January 19, 2023, Lettieri opposed the motion to dismiss.  Dkt. 19 ("Opp.").  On January 26, 2023, defendants replied.  Dkt. 21 ("Reply").

On January 25, 2023, the Court ordered the parties to file a joint letter addressing whether there was diversity jurisdiction and, if so, on what factual basis.  Dkt. 20.  On January 31, 2023, in response, the parties filed a joint letter stating that there is diversity jurisdiction, because Lettieri is a Connecticut citizen, defendants are New York citizens, and the amount in controversy exceeds $75,000.  Dkt. 23.

---

[5] The Court takes judicial notice of Lettieri's state-court filings, which include a copy of the docket, Dkt. 15-1, the initial complaint, Dkt. 15-2, and the amended complaint, Dkt. 15-3.  The Court has also considered an identical case Lettieri filed on June 15, 2022 before another judge in this District, Dkt. 15-2, and a copy of Lettieri's New York state court complaint, Dkt. 15-4. *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (internal quotation marks omitted)).

## II.      Applicable Legal Standards

### A.      Motion to Dismiss Under Rule 12(b)(6)

To withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a complaint must plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  A complaint is appropriately dismissed when "the allegations in a complaint, however

true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  When

resolving a motion to dismiss, the Court must assume all well pleaded facts to be true, "drawing

all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141,

145 (2d Cir. 2012).  That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556

U.S. at 678.  Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555

## III.     Discussion

Were federal jurisdiction in this case based solely on the existence of the federal (Title

VII) claims, the Court would consider whether those claims were adequately pled, and if not,

decline to exercise supplemental jurisdiction over the state and city law claims. *See Pension*

*Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs Ret. Plan v. Morgan Stanley Inv. Mgmt.*

*Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) ("[I]n the usual case in which all federal-law claims are

eliminated before trial, the balance of factors to be considered under the pendent jurisdiction

doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to

exercise jurisdiction over the remaining state-law claims." (internal quotation marks omitted));

*see, e.g., Daniel v. City of New York*, No. 20 Civ. 11028 (PAE), 2021 WL 5988305, at *11

(S.D.N.Y. Dec. 16, 2021) (dismissing Title VII claims and declining to exercise supplemental jurisdiction over NYSHRL and NYCHRL claims); *Humphries v. City Univ. of N.Y.*, No. 13 Civ. 2641 (PAE), 2013 WL 6196561, at *13 (S.D.N.Y. Nov. 26, 2013) (same, as to NYSHRL claims). In this case, however, there is an independent basis—diversity jurisdiction—to exercise jurisdiction over the state and city law claims, such that, even were the Title VII claims to be dismissed, an assessment would be required as to whether the state and city law claims were well pled. Accordingly, because it must evaluate the adequacy of the AC's allegations under Title VII, the NYSHRL, *and* the NYCHRL, the Court begins with the claims under the statute whose standards of liability are most lenient—the NYCHRL. The Court does so in recognition that, if these claims fail, it follows that the parallel claims under Title VII and the NYSHRL fail, as well.

### A.   Lettieri's NYCHRL Claims

The AC alleges that defendants discriminated against Lettieri on the basis of her race, marital status, and impending pregnancy, and created a hostile work environment based on the same, in violation of the NYCHRL. AC ¶¶ 98, 112, 115. It also alleges an NYCHRL aiding and abetting claim based on the same. *Id.* ¶¶ 106–10. The AC alleges that Straker—and by extension, the ADL—did so by: (1) assigning Lettieri additional work, (2) commenting that "all [Lettieri] does in the office is plan her wedding," (3) denying her request to work remotely and/or for time off on Christmas Eve 2019, and (4) forcing her to resign and/or terminating her in 2020. *Id.* ¶¶ 25, 39, 44, 49; Opp. at 6–13. In moving to dismiss, defendants argue that the AC's factual allegations fall short as to all claims. As to claims based on her intended pregnancy, defendants argue, Lettieri's AC fails to allege membership in a statutorily protected class. And, as to all her claims, whether based on her intended pregnancy, marital status, or race, defendants argue, the AC does not adequately allege that Lettieri was treated less well or retaliated against

8

on the basis of these protected characteristics. Mem. at 7–18. Defendants' latter critique is on the mark.

### 1.    Applicable Legal Standards

The NYCHRL's liability standards are lower than those of Title VII and, historically, than those of the NYSHRL, *see infra* note 15, whose standards until recently were keyed to Title VII's more demanding standards.

#### *i.    Discrimination and Hostile Work Environment*

Under the NYCHRL, "[t]he standards for discrimination and hostile work environment are the same." *Raji v. Societe Generale Ams. Sec. LLC*, No. 15 Civ. 1144 (AT) (JLC), 2018 WL 1363760, at *7 (S.D.N.Y. Feb. 28, 2018); *Johnson v. Strive E. Harlem Emp. Grp.*, 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014) (same); *Clarke v. InterContinental Hotels Grp., PLC*, No. 12 Civ. 2671 (JPO), 2013 WL 2358596, at *11 (S.D.N.Y. May 30, 2013) ("Under the NYCHRL, there are not separate standards for 'discrimination' and 'harassment' claims; rather, there is only the provision of the law that proscribes imposing different terms, conditions and privileges of employment based, *inter alia*, on gender." (internal quotation marks omitted)).

"Section 8-107(1)(a) of the NYCHRL makes it 'an unlawful discriminatory practice for an employer or an employee or agent thereof, because of the [protected characteristic] of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.'" *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109–10 (2d Cir. 2013) (quoting N.Y.C. Admin. Code § 8-107(1)(a)) (brackets and ellipses omitted). To allege discrimination under the NYCHRL, a plaintiff need only allege that she was "treated 'less well' . . . because of a discriminatory intent." *Id.* at 110 (citing *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 73 (2009)). "[T]he challenged conduct need not even be 'tangible' (like hiring or

firing)." *Id.* (quoting *Williams*, 61 A.D.3d at 79); *see also Wolf v. Time Warner, Inc.*, 548 F.

App'x 693, 696 (2d Cir. 2013) ("To state a claim for discrimination, a plaintiff must only show

differential treatment of any degree based on a discriminatory motive."). However, "[t]he

plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive,"

and "[i]t is not enough that a plaintiff has an overbearing or obnoxious boss." *Richards v. Dep't*

*of Educ. of City of N.Y.*, No. 21 Civ. 338 (LJL), 2022 WL 329226, at \*20 (S.D.N.Y. Feb. 2,

2022). Because the NYCHRL standard is more liberal than the corresponding federal and state

law standards, courts must analyze NYCHRL claims "separately and independently from any

federal and state law claims." *Mihalik*, 715 F.3d at 109; *Syeed v. Bloomberg L.P.*, 568 F. Supp.

3d 314, 321 (S.D.N.Y. 2021).

          *ii.*    *Retaliation*

       The NYCHRL's definition of retaliation is likewise broader than its federal and state

counterparts. It provides:

> It shall be an unlawful discriminatory practice for any person engaged in any
> activity to which this chapter applies to retaliate or discriminate in any manner
> against any person because such person has (i) opposed any practice forbidden
> under this chapter, (ii) filed a complaint, testified or assisted in any proceeding
> under this chapter, (iii) commenced a civil action alleging the commission of an act
> which would be an unlawful discriminatory practice under this chapter, (iv) assisted
> the commission or the corporation counsel in an investigation commenced pursuant
> to this title, (v) requested a reasonable accommodation under this chapter, or
> (vi) provided any information to the commission pursuant to the terms of a
> conciliation agreement[].

N.Y.C. Admin. Code § 8-107(7) (emphasis added). "[T]o prevail on a retaliation claim under the

NYCHRL, the plaintiff must show that she took an action opposing her employer's

discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely

to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (internal quotation

marks and citations omitted); *see Xiang v. Eagle Enters., LLC*, No. 19 Civ. 1752 (PAE), 2020

WL 248941, at *9 (S.D.N.Y. Jan. 16, 2020) (same).  New York courts have interpreted the

NYCHRL's retaliation provisions broadly.  They have held that "'oppos[ing] any practice' can

include situations where a person, before the retaliatory conduct occurred, merely 'made clear

her disapproval of [the defendant's] discrimination by communicating to [him], in substance, that

she thought [his] treatment of [the victim] was wrong.'"  *Mihalik*, 715 F.3d at 112 (alterations in

original).

### 2.   Lettieri's Discrimination and Hostile Work Environment Claims

The Court begins with the AC's claims that Lettieri was discriminated against, and

subjected to a hostile work environment, on the basis of her impending pregnancy, marital status,

and race.  Because the same standard applies to discrimination and hostile work environment

claims under the NYCHRL, the Court addresses them together.

#### i.   Lettieri's "Impending Pregnancy"

The AC's allegations that defendants discriminated against Lettieri and created a hostile

work environment based on her impending pregnancy do not state a claim.  At the outset, the

Court puts aside the bulk of the AC's allegations on this point as conclusory.  *See* AC ¶¶ 27

(Straker "treated Plaintiff less well on the basis that she was attempting to become pregnant"), 30

(Straker "discriminated against [her] on the basis of her family/pregnancy status[]"); *Pungitore v.

Barbera*, 506 F. App'x 40, 42 (2d Cir. 2012) (summary order) ("A court must first ignore mere

conclusory statements. . . ." (internal quotation marks omitted)).  As to non-conclusory

allegations, the AC alleges Lettieri took prenatal vitamins, AC ¶ 18, attempted to conceive, *id.*,

and openly discussed her desire to become pregnant, and efforts to do so, with Martinez, Straker,

Rosenberg, and other unidentified "colleagues and supervisors," *id.* ¶¶ 23–24, 31–32.  But even

taken together, these allegations are too thin to support a discrimination or hostile work

environment claim on the basis of Lettieri's impending pregnancy.

"Pregnancy discrimination is a form of gender discrimination under the NYCHRL." *Chauca v. Abraham*, 841 F.3d 86, 90 n.2 (2d Cir.), *as amended* (Nov. 8, 2016), *certified question accepted*, 28 N.Y.3d 1108 (2016), *and certified question answered*, 30 N.Y.3d 325 (2017); *see, e.g.*, *Romero v. St. Vincent's Servs., Inc.*, No. 19 Civ. 7282 (KAM) (ST), 2022 WL 2079648, at *8 (E.D.N.Y. June 10, 2022), *aff'd*, 2023 WL 3477161 (2d Cir. May 16, 2023) (summary order); *see also Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 357 (S.D.N.Y. 2012) ("Though neither the NYSHRL nor the NYCHRL explicitly names pregnancy as a type of actionable discrimination, courts have deemed pregnancy discrimination actionable under both laws."). "Thus, under the NYCHRL, it is an unlawful discriminatory practice for 'an employer or an employee or agent thereof'" to discharge an employee or discriminate against such person in "terms, conditions or privileges of employment" because of her pregnancy, whether "actual or perceived." *Romero*, 2022 WL 2079648, at *8 (quoting N.Y.C. Admin. Code § 8–107(1)(a)). To allege pregnancy discrimination under the NYCHRL, a "plaintiff must show that she was treated differently from others who took leave or were otherwise unable or unwilling to perform their duties for reasons unrelated to pregnancy or that she simply was treated differently because of her pregnancy." *Shibetti v. Z Rest., Diner & Lounge, Inc.*, No. 18 Civ. 856 (ERK) (ST), 2019 WL 11624313, at *12 (E.D.N.Y. Aug. 30, 2019).

Defendants argue, at the outset, that Lettieri is not a member of a protected class on the basis of her "impending pregnancy" under federal, state, or city civil rights laws. *See* Mem. at 7–12. They cite out-of-circuit authority for the proposition that women who intend to have children are not a protected class under any statute. *Id.* at 10 (citing *Barnowe v. Kaiser Found. Health Plan of the Nw.*, No. 03 Civ. 1672 (BR), 2005 WL 1113855, at *4 (D. Or. May 4, 2005) (distinguishing cases where "plaintiffs were undergoing *in vitro* fertilization treatment in an

effort to become pregnant, and their employers were aware of these treatments," who were protected, from those involving a plaintiff who "merely informed [her supervisor] she was 'planning on' trying to get pregnant again," who was not protected)). In response, Lettieri points to case law under Title VII prohibiting discrimination on the basis of a woman's capacity to become pregnant, where an employer barred "fertile women" from jobs where they would be exposed to lead to protect their potential future fetuses. *Int'l Union UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 190–91, 206 (1991). The Second Circuit has not spoken on whether plaintiffs who plan to become pregnant are members of a statutorily protected class, under Title VII or the NYCHRL. *See Hesse v. Dolgencorp of N.Y., Inc.*, No. 10 Civ. 421 (WMS), 2014 WL 1315337, at *17 (W.D.N.Y. Mar. 31, 2014).

The Court need not decide that question of statutory construction here, however, because, even assuming Lettieri was a member of a statutorily protected class based on her "impending pregnancy," the AC does not plead facts adequate to support the inference that defendants treated Lettieri less well on that basis.[6] *See id.* (assuming, without deciding, plaintiff was a member of a

---

[6] The Court nonetheless notes a line of cases within this Circuit holding—drawing on Title VII's protection for "women affected by pregnancy, childbirth, or related medical conditions," 42 U.S.C. § 2000e(k)—that while a woman need not be actually pregnant to invoke the statute, she must have been "affected by pregnancy" at or near the time of the adverse employment action. *See, e.g., Lulo v. OTG Mgmt., LLC*, No. 19 Civ. 3776 (PAE), 2022 WL 409224, at *9 (S.D.N.Y. Feb. 10, 2022) ("[A] plaintiff who was not pregnant at or near the time of the adverse employment action must introduce evidence at the *prima facie* stage that she was still 'affected by pregnancy' when she suffered the adverse employment action."); *Albin v. LVMH Moet Louis Vuitton, Inc.*, No. 13 Civ. 4356 (JPO), 2014 WL 3585492, *4 (S.D.N.Y. July 8, 2014) ("While ultimately dependent on the factual situation of the specific claim, a pattern has developed in this Circuit establishing a loose line at approximately four months from the date of birth." (collecting cases)); *Briggs v. Women in Need, Inc.*, 819 F. Supp. 2d 119, 126–27 (E.D.N.Y. 2011) (same); *Helmes v. S. Colonie Cent. Sch. Dist.*, 564 F. Supp. 2d 137, 147 (N.D.N.Y. 2008) ("[A]t some point in time . . . women are no longer 'affected by pregnancy, childbirth, or related medical conditions' and, thus, are not protected under the Pregnancy Discrimination Act."); *Keller v. Great Lakes Collection Bureau, Inc.*, No. 02 Civ. 0719 (CF), 2005 WL 2406002, at *4

protected class based on her plan to become pregnant).  Such a showing is necessary to sustain

the AC.  Under the NYCHRL, as under Title VII and the NYSHRL, generalized hostility or

generally uncivilized behavior is not actionable.  Whether a claim in a complaint is cast as

alleging discrimination or hostile work environment, the defendant's offending conduct must

have been keyed to a protected characteristic of the plaintiff.  *See, e.g., Stinson v. City Univ. of

N.Y.*, No. 17 Civ. 3949 (KBF), 2018 WL 2727886, at *8 (S.D.N.Y. June 6, 2018) ("In order to

prevail on a hostile work environment claim under the NYCHRL, a plaintiff must show that she

was treated 'less well than other employees' on the basis of a protected characteristic.");

*Goodwine v. City of New York*, No. 15 Civ. 2868 (JMF), 2016 WL 3017398, at *8–9 (S.D.N.Y.

May 23, 2016) (NYCHRL requires that conduct was based on protected characteristic); *Harris v.

NYU Langone Med. Ctr.*, No. 12 Civ. 0454 (RA) (JLC), 2013 WL 3487032, at *27 (S.D.N.Y.

July 9, 2013) ("[T]he broader remediation available under the [NYCHRL] does not allow the

Plaintiff to dispense with linking his claim of hostility to some attitude that the law forbids."

---

(W.D.N.Y. Sept. 29, 2005) (dismissing Title VII claim where no allegations that, two years after giving birth, plaintiff was still affected by the pregnancy:  "Her status as a working mother of two children is not enough to bring her into the protected class of pregnant workers under the PDA.").  To the extent this standard might apply to the NYCHRL, Lettieri's AC, however, does not appear to reach it.  Beyond the allegation that Lettieri was taking prenatal vitamins—which the AC does not allege had any effect on her—the AC is devoid of allegations that Lettieri was in any way affected by pregnancy or any associated behavior at any time during her tenure working for defendants.  *Cf. Lulo*, 2022 WL 409224, at *9 (granting summary judgment against plaintiff on Title VII, NYSHRL, and NYCHRL claims where no evidence that she was still "affected by" pregnancy-related postpartum depression at, or near, time of termination); *Keller*, 2005 WL 2406002, at *4 (same, as to Title VII claim; status as working mother not protected).  *Contra Briggs*, 819 F. Supp. 2d at 127 (denying motion to dismiss where plaintiff alleged she was still recovering from cesarean section, and had not been cleared to return to work by her doctor, at time of termination).  Nor does the AC allege that Lettieri's coworkers believed her to be pregnant, as could supply a basis for discrimination based on a *perceived* pregnancy.  *Cf. Romero*, 2022 WL 2079648, at *8 (NYCHRL prohibits discrimination on basis of "actual or *perceived*" pregnancy (emphasis in original)).

(internal alteration and quotation marks omitted)), *report and recommendation adopted*, 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013).

The AC here lacks any such allegations.  To the contrary—with the exception of Rosemberg's suggestion that Lettieri convert to Judaism so that her children would be considered Jewish, *id.* ¶ 31, which Lettieri does not argue was discriminatory or connected to any differential treatment[7]—the AC does not contain any non-conclusory allegations that, let alone how, Lettieri's coworkers responded at all to her expressed desire to conceive. *See, e.g., Shukla v. Deloitte Consulting LLP*, No. 19 Civ. 0578 (AJN) (SDA), 2020 WL 3181785, at *10–11 (S.D.N.Y. June 15, 2020) (dismissing NYCHRL hostile work environment and discrimination claims where complaint did not allege that discrimination was "based upon [plaintiff's] gender"); *Sutter v. Dibello*, No. 18 Civ. 817 (ADS) (AKT), 2019 WL 4195303, at *21 (E.D.N.Y. Aug. 12, 2019) (dismissing NYCHRL discrimination claim where amended complaint "contains no averments beyond conclusory allegations that Plaintiff was treated les[s] well because of her [protected status]"), *report and recommendation adopted*, 2019 WL 4193431 (E.D.N.Y. Sept. 4, 2019).

### ii.    *Marital Status*

The AC's allegations that Lettieri was discriminated against, and subjected to a hostile work environment, on the basis of her marital status are equally threadbare.  As reviewed above, these allegations centrally include that, in November 2019, Straker "began asking coworkers about [Lettieri's] family status" and commented that "all [Lettieri] does in the office is plan her wedding," AC ¶ 25, and that, in December 2019, Straker required Lettieri to use vacation days to

---

[7] Lettieri points to her exchange with Rosemberg, instead, to argue that coworkers knew of her plan to conceive. *See* Opp. at 2.

work remotely or take time off on Christmas Eve, despite "kn[owing] that [Lettieri] was saving her vacation time to use in connection with her wedding," *id.* ¶¶ 42–44.

Even read together and in the light most favorable to Lettieri, these allegations do not adequately plead that Lettieri was treated less well *based on* her marital status.[8] The NYCHRL provides, in relevant part, that an employer is prohibited from discriminating against any person "because of [his or her] actual or perceived . . . marital status." *Owens v. Centene Corp.*, No. 20 Civ. 118 (EK) (RLM), 2022 WL 4641129, at *4 (E.D.N.Y. Sept. 30, 2022) (alterations in original) (quoting N.Y.C. Admin. Code § 8-107(1)(a)). But Straker's comment that "all [Lettieri] does in the office is plan her wedding" does not speak at all to Lettieri's relationship or marital status, but rather to her in-office productivity and performance. Indeed, were the word "wedding" replaced with any other significant personal commitment that required planning (for example, a birthday or retirement party), the sentiment of Straker's remark would be the same. *See Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 250 (E.D.N.Y. 2015) (dismissing NYCHRL claim where plaintiffs did not allege their termination was "caused by a discriminatory motive," rather than their other actions); *cf. Harris v. Off. of N.Y. State Comptroller*, No. 20 Civ. 8827 (LAP), 2022 WL 814289, at *13 (S.D.N.Y. Mar. 17, 2022) (dismissing NYCHRL hostile work environment claim where plaintiff alleged he was "subjected to a constant stream of comments, jokes and other misconduct that signaled he was not a 'real man' . . . because he did not engage

---

[8] The Court assumes, *arguendo*, that the NYCHRL's protection based on marital status extends to Lettieri's situation as a person engaged to be married. *See, e.g.*, *Owens v. Centene Corp.*, No. 20 Civ. 118 (EK) (RLM), 2022 WL 4641129, at *4 n.8 (assuming, without deciding, that plaintiff's situation of having once been in a relationship and sharing a child with another employee was actionable); *cf. Morse v. Fidessa Corp.*, 165 A.D.3d 61, 62 (1st Dep't 2018) ("'[M]arital status' must be given a broader meaning than simply married or not married. . . . [I]t must encompass other factors that may be used to deem the relationship 'disqualifying,' i.e., unacceptable.").

in sexual misconduct," but failed to allege comments were because of protected status); *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 301 (S.D.N.Y. 2019) (dismissing NYCHRL claim where plaintiff alleged supervisor denied requested leave without pay, directed him to move 54 boxes without assistance despite knowledge of plaintiff's disability, and sent him emails with great frequency, as these facts did not allege that disability motivated these actions). Straker's inquiry to "coworkers about [Lettieri's] family status" in the same time period is likewise too vague a basis from which to infer a discriminatory intent. AC ¶ 25; *see Cruz v. SEIU Loc. 32BJ*, No. 19 Civ. 11836 (LGS), 2021 WL 3604661, at *6 (S.D.N.Y. Aug. 12, 2021) (dismissing NYSHRL and NYCHRL claims where factual allegations were too general and conclusory and did not identify specific comparators or detail instances of discrimination).

The AC's allegation that Straker was aware of Lettieri's efforts to save vacation time for her wedding similarly does not suggest that Straker, in insisting that Lettieri use vacation time or take time off on Christmas Eve, acted out of animus tied to Lettieri's marital status. *Cf., e.g., Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*, No. 19 Civ. 6034 (JPO), 2019 WL 6916099, at *5–6 (S.D.N.Y. Dec. 19, 2019) (no "connective tissue" for NYCHRL claim where plaintiff had disclosed she was a woman on job application, but did no more than speculate that her protected status had motivated defendants' failure to hire); *Sutter*, 2019 WL 4195303, at *4, *21 (dismissing NYCHRL claim because plaintiff's "attempt to connect the [d]efendants' actions to [p]laintiff's sex or race is inherently conclusory," where plaintiff alleged "non-white females" were not subject to comparable scrutiny, false imprisonment, denial of requests, and administrative charges of misconduct); *Szewczyk v. City of New York*, No. 15 Civ. 918 (MKB), 2016 WL 3920216, at *12 (E.D.N.Y. July 14, 2016) (dismissing NYCHRL claim; allegation that

interviewer stood close and pointed at her blue eyes during interview insufficient to infer she had not been hired because of race).

>            *iii.*    Race

As to the AC's assertion that Lettieri was discriminated against and subjected to a hostile work environment on the basis of her race, its factual allegations, once more, fall short.  The Court again puts aside conclusory allegations, such as that Straker "(who is African American) consistently treated Plaintiff less favorably than her African-American coworker on the basis that Plaintiff is Caucasian."  AC ¶ 33; *see Pungitore*, 506 F. App'x at 42; *see, e.g.*, AC ¶¶ 36, 47, 56. It instead considers, together, the AC's allegations that Lettieri was given more work to compensate for a Black employee's (Sowe's) "poor performance," and, unlike Sowe, required to use vacation time to work remotely or take time off, not compensated for working beyond normal business hours, and terminated.  Opp. at 10–11.

The AC, again, offers too few facts from which to infer that defendants' treatment of Lettieri was motivated by her race.  The AC states only that Straker, herself, is Black, AC ¶ 33, and that after Lettieri complained to Simon, Simon "empathized" and stated she "also felt that [Straker] treated her less well than her African-American counterpart," *id.* ¶¶ 36–37.  Under the NYCHRL, "a discriminatory motive can be shown either by pleading direct evidence of discrimination, including comments indicating prejudice on account of a protected characteristic, or by pleading facts showing that comparators were treated better than the plaintiff was." *Bautista v. PR Gramercy Square Condo.*, No. 21 Civ. 11093 (ER), 2022 WL 17156628, at *9 (S.D.N.Y. Nov. 22, 2022); *see, e.g.*, *Wilson v. JPMorgan Chase Bank, N.A.*, No. 20 Civ. 4558 (JMF), 2021 WL 5179914, at *5 (S.D.N.Y. Nov. 8, 2021) (same); *Ibrahim v. Fid. Brokerage Servs. LLC*, No. 19 Civ. 3821 (VEC), 2020 WL 107104, at *5 (S.D.N.Y. Jan. 9, 2020) (same). The AC does not allege either.

As to direct evidence of discrimination, although a single discriminatory comment can be sufficient to evince a discriminatory motive, *Ibrahim*, 2020 WL 107104, at *5, at no point does the AC allege that Straker referenced Lettieri's or anyone else's race, let alone that she did so in a manner suggestive of an intent to discriminate on that basis. *See Bautista*, 2022 WL 17156628, at *9 (dismissing NYCHRL claim where, *inter alia*, complaint was "devoid of allegations that would directly show racial prejudice"); *Rothbein v. City of New York*, No. 18 Civ. 106 (VEC), 2019 WL 977878, at *10 (S.D.N.Y. Feb. 28, 2019) (same, where "Complaint [was] entirely devoid of any facts directly evidencing a discriminatory motive on the part of any Defendant—a homophobic slur, for instance, or any other remark or conduct relating to Plaintiff's sexuality"); *Stinson*, 2018 WL 2727886, at *10 (same, where "[a]t no point in his lengthy complaint does plaintiff allege that any defendant commented on his race in any way"); *cf. Shipkevich v. N.Y. & Presbyterian Hosp.*, No. 16 Civ. 9630 (RA), 2020 WL 5796202, at *2 (S.D.N.Y. Sept. 29, 2020) (denying summary judgment on NYCHRL age discrimination claim where plaintiff alleged "several stray remarks" were made about his age by colleagues, but failed to connect those remarks to any decisions as to his employment). *Contra Wilson*, 2021 WL 5179914, at *6 (direct evidence of hostile work environment alleged where supervisors, *inter alia*, referred to the "'African American barbie' in the executive wing" and called Black employees "those people," including on one occasion when supervisor said "those people think they can go to Yale and Harvard and it will change who they are and it won't"). Nor does the AC allege any other remark or conduct related to Lettieri's race from which the Court could infer discriminatory intent.[9] *See Rothbein*, 2019 WL 977878, at *10; *cf. Scalercio-Isenberg*, 2019 WL 6916099, at

---

[9] Simon's alleged statement of opinion that she "also felt that [Straker] treated her less well than her African-American counterpart," AC ¶¶ 36–37, is conclusory.  Without any indication of the

*5–6 (no "connective tissue" for NYCHRL claim where plaintiff had disclosed she was a woman on application, but offered only her and others' speculation that protected status motivated defendants' failure to hire).

As to the treatment of comparators relative to Lettieri, the AC alleges that Sowe was treated preferentially to Lettieri, in that Sowe had less work, was permitted to take time off without using vacation days,[10] was paid or given time off when she worked late, and was not terminated, despite her "poor performance." But the AC is devoid of allegations as to Sowe's position, role, and seniority at ADL. These make ill-pled the AC's premise that Sowe was Lettieri's comparator, such that their alleged differential treatment can plausibly be tied to race. *See, e.g., Bautista*, 2022 WL 17156628, at *9 (comparator allegations insufficient where plaintiff alleged only coworker told him new white workers did not work as hard, took more breaks, and showed up late, unlike plaintiff who was "always an excellent worker"); *Rothbein*, 2019 WL 977878, at *10 (same, where plaintiff failed to allege that comparator was "similarly situated in all material respects" or "subject to the same workplace standards"); *cf. Nnebe v. City of New York*, No. 22 Civ. 3860 (VEC) (SLC), 2023 WL 2393920, at *14 (S.D.N.Y. Jan. 30, 2023)

---

basis of that statement, it does not support an inference of discriminatory intent. *Cf. Bautista*, 2022 WL 17156628, at *9 (dismissing NYCHRL claim where plaintiff alleged coworker told him new white workers were treated preferentially). The allegations that Lettieri's "mentor," Edge, believed she was doing a "great job" and was "shocked" to learn of Lettieri's termination, *id.* ¶ 52, and that Cooper, an ADL employee in the Albany office, stated that the reasons for Lettieri's termination were untrue, *id.* ¶ 53, do not support that the basis for Lettieri's termination was her race.

[10] The AC's allegations as to vacation time would be somewhat closer to the mark had there been a claim made of religious discrimination. The AC alleges that Lettieri was required to use vacation time to work remotely or take time off on Christmas Eve "for religious and cultural purposes," AC ¶ 44, whereas Sowe, who is Muslim, was "given constant religious and cultural accommodations for prayer time throughout the day, even during important meeting times," and "religious holidays to work remotely without using vacation hours," *id.* The AC, however, does not allege religious discrimination in violation of federal, state, or city law.

(collecting cases) (dismissing NYCHRL claim where plaintiff did not allege comparators engaged in conduct of comparable seriousness), *report and recommendation adopted*, 2023 WL 2088526 (S.D.N.Y. Feb. 17, 2023). *Contra Wilson*, 2021 WL 5179914, at *6 (sustaining NYCHRL claim where plaintiff alleged African-American assistants were subject to stricter security requirements than other assistants, and chair of Audit Committee told her others at company "view African Americans as thieves, drug dealers or a threat [of] physical violence" (alteration in original)).

Accordingly, because the AC's allegations of differential treatment are unconnected from any protected characteristic, the Court grants defendants' motion to dismiss its discrimination and hostile work environment claims under the NYCHRL. *See, e.g.*, *Fattoruso v. Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 578 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013) (dismissing NYCHRL sexual harassment claim where "nothing . . . indicates that plaintiff was treated 'unequally' based upon his [protected status]"); *Gonzalez*, 377 F. Supp. 3d at 302 (same); *Goodwine*, 2016 WL 3017398, at *9 (dismissing NYCHRL claim where supervisor referred to plaintiff "as a 'cunt' and 'bitch'" and "was once asked rhetorically if she was 'smoking crack'" but no allegations connected conduct to gender or race); *see also Scalercio-Isenberg*, 2019 WL 6916099, at *6 (dismissing NYCHRL claim where no "connective tissue" between conduct and protected status).

### 3.     Retaliation

The Court turns next to Lettieri's retaliation claim under the NYCHRL.  Two sets of allegations are salient.  First, the AC alleges that Lettieri engaged in protected activities by: (1) in December 2019, asking Straker to refrain from making comments such as "all [Lettieri] does in

the office is plan her wedding," AC ¶ 28[11]; (2) on January 15, 2020, complaining to Straker "regarding Sowe's performance issues," *id.* ¶ 35; and (3) at an undefined time—but, based on the AC's structure and allegations, after January 15, 2020—complaining to another ADL employee that "she felt [Straker] targeted [her] on the basis of her race," *id.* ¶ 36. Second, the AC alleges that Straker retaliated against Lettieri "for her complaints of racial discrimination," *id.* ¶ 41, by: (1) in December 2019, requiring Lettieri to use a vacation day to work remotely or take time off on Christmas Eve, *id.* ¶¶ 42–43; (2) in December 2019, assigning Lettieri to conduct a large training in New Jersey, *id.* ¶ 39; (3) on January 8, 2020, stating she would "get back to [Lettieri]," when Lettieri requested compensation for working two hours past business hours for a training, *id.* ¶ 46; and (4) on January 27, 2020, terminating Lettieri, *id.* ¶ 59. For several reasons, these allegations fail to plead actionable retaliation.

To begin, the AC's allegations as to protected activities are deficient. Lettieri's opposition in December 2019 to Straker's remark(s) that "all [Lettieri] does in the office is plan her wedding" does not qualify as such. Opp. at 16. "Even if a complaint is ultimately without merit, lodging the complaint is a protected activity so long as it was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful." *See Leroy v. Delta Air Lines*, No. 21-267-CV, 2022 WL 12144507, at *4 (2d Cir. Oct. 27, 2022) (summary order) (internal quotation marks omitted). "The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances" and is "evaluated from the perspective of a reasonable similarly situated person." *Id.* (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14–15, 17 (2d Cir. 2013)). "That principle is very

---

[11] As above, the Court puts aside conclusory allegations. *See, e.g.*, AC ¶ 29 ("Plaintiff engaged in protected activity by complaining about her supervisors' discriminatory remarks.").

forgiving, but it does not transform every complaint into activity protected under the NYCHRL,"
and a "plaintiff's belief is not reasonable simply because she or he complains of something that
appears to be discrimination in some form." *Id.* (internal quotation marks omitted).  Viewing
Straker's comments in the context of the other facts pled, a reasonable, similarly situated person
would not regard these negative assessments of Lettieri's in-office productivity, *see* AC ¶¶ 25–
29, as discriminatory or an unlawful employment practice.[12]  Lettieri's complaint to Straker
about Sowe's "performance issues," too, was not a protected activity; Lettieri complained only
about Sowe's performance, not about defendants' response to it.  *See Small v. N.Y.C. Dep't of
Educ.*, No. 21 Civ. 1527 (GHW), 2023 WL 112546, at *10–11 (S.D.N.Y. Jan. 5, 2023) (activity
not protected where plaintiff complained about student's behavior, rather than school's response
to it); *Fattoruso v. Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 581 (S.D.N.Y. 2012)
(activity not protected where complaints about violations of company policy and about "benefits
derived from a consensual, romantic relationship" did not put employer on notice that plaintiff
was complaining about unlawful activity), *aff'd*, 525 F. App'x 26 (2d Cir. 2013); *cf. Leroy*, 2022
WL 12144507, at *5 (similarly situated person would not have good-faith, reasonable belief that

---

[12] Insofar as the AC alleges that, in response to Lettieri's complaint, Straker "retaliated against
[Lettieri] by forcing her to use vacation time unnecessarily," AC ¶ 43, Straker's insistence that
Lettieri use vacation time was not likely, under the facts alleged, to deter a reasonable employee
from filing a complaint. *Cf. Dudley v. N.Y.C. Hous. Auth.*, No. 12 Civ. 2771 (PGG), 2014 WL
5003799, at *29 (S.D.N.Y. Sept. 30, 2014) (no NYCHRL retaliation where change in
employee's work hours, such that he had to report to work earlier, would not deter reasonable
employee from filing discrimination complaint).  That is particularly so because, although the
AC alleges that Lettieri initially requested "to work remotely on Christmas Eve," AC ¶ 42, it
then alleges that, after Straker's supervisor directed all staff to work remotely that day, Straker
"told [Lettieri] to use a vacation day" when Lettieri "requested *time off* on December 24, 2019,
for religious and cultural purposes," *id.* ¶ 44 (emphasis added).  Without more, it is not plausibly
pled that Straker's insistence that Lettieri use a vacation day to take vacation would deter a
reasonable person engaging in a protected activity.

Delta engaged in unlawful employment practice based on passenger's racist comments to flight attendant).

The AC's allegations also fall short as to Lettieri's complaint to co-worker Simon that "she felt [Straker] targeted [her] on the basis of her race," *id.* ¶ 36.  Although the AC does not allege when Lettieri spoke to Simon, the conversation appears to have occurred after January 15, 2020, based on the allegation's placement in the AC's chronology, and the allegation that Lettieri spoke to Simon "[a]s a result of [Straker] discriminating against [her] on the basis of her race," *id.*, by tasking Lettieri with helping Sowe "get over her learning curve," *id.* ¶ 35.  The AC fails to allege that Lettieri's complaint to Simon caused defendants' alleged retaliation.  That is because both ostensibly retaliatory events—Straker's December 2019 assignment of additional work to Lettieri, *id.* ¶ 38, and her January 8, 2020 statement that she would "get back to [Lettieri]" regarding payment for working two hours past business hours, *id.* ¶ 46—occurred *before* Lettieri complained to Simon.  They thus cannot have been caused by—or in retaliation for—that protected activity.  *See Richards*, 2022 WL 329226, at *21 (no retaliation alleged under NYCHRL insofar as, *inter alia*, complaint did not allege plaintiff engaged in protected activity *before* retaliation); *cf. Dudley*, 2014 WL 5003799, at *27 (dismissing retaliation claim where no causal connection); *see also Kenny v. Cath. Charities Cmty. Servs. Archdiocese of N.Y.*, No. 20 Civ. 3269 (PAE) (RWL), 2023 WL 1993332, at *24 (S.D.N.Y. Feb. 14, 2023) (granting summary judgment on Title VII retaliation claim to defendants where protected activity occurred after alleged retaliation).

In any event, the AC's generalized allegations as to Lettieri's conversation with Simon do not supply a plausible basis from which to infer that *defendants* were on notice of Lettieri's complaint to Simon, let alone that those remarks caused her termination.  Although a broad range

24

of conduct can qualify as retaliatory under the NYCHRL, *see Sass v. MTA Bus Co.*, No. 10 Civ. 4079 (MKB), 2012 WL 4511394, at *3 n.3 (E.D.N.Y. Oct. 2, 2012) (plaintiffs need not allege materially adverse action), the plaintiff must still allege that the defendant was aware of the protected activity, such that it could have caused the retaliation, *compare id.* (essential elements of retaliation claim same under NYCHRL and Title VII), *and Pacheco v. N.Y. Presbyterian Hosp.*, 593 F. Supp. 2d 599, 626 n.17 (S.D.N.Y. 2009) (same), *with Stern v. State Univ. of N.Y.*, No. 16 Civ. 5588 (NGG) (LB), 2018 WL 4863588, at *18 (E.D.N.Y. Sept. 30, 2018) (under Title VII, plaintiff must allege defendants' knowledge of protected activity, or that decision-maker was influenced by superior with knowledge of protected activity); *cf. Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 521 (S.D.N.Y. 2010) (dismissing Title VII retaliation claim where overall context of complaint did not put defendant on notice).

Here, the AC does not allege general corporate knowledge that Lettieri engaged in a protected activity sufficient to plead the element of notice. *See Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000). *Contra Hunt v. Consol. Edison Co. of N.Y., Inc.*, No. 18 Civ. 7262 (MKB), 2021 WL 3492716, at *10 (E.D.N.Y. Aug. 9, 2021) (general corporate knowledge where defendant corporation had appeared and moved to dismiss in prior related litigation); *Ugactz v. United Parcel Serv., Inc.*, No. 10 Civ. 1247 (MKB), 2013 WL 1232355, at *19 (E.D.N.Y. Mar. 26, 2013) (same, where accommodation request made as part of defendant's formal request process). Instead, it alleges only that Simon is another ADL employee who "previously," but no longer, "worked under [Straker's] supervision" and who "empathized with [Lettieri's] complaint." AC ¶¶ 36–37. It does not contain any allegations about the circumstances of Lettieri and Simon's conversation, Simon's role within ADL, or the conduct Simon claimed to have experienced. Nor does it allege that Simon repeated Lettieri's complaint

so as to put defendants on notice of Lettieri's remarks prior to terminating her. And, even assuming that Lettieri was not, in fact, terminated due to her "poor performance," *see id.* ¶¶ 49–54, the AC contains only conclusory allegations to allege that the true reason was to retaliate for complaints by Lettieri, *see, e.g., id.* ¶¶ 56–57. Allegations of this nature must be put aside. *See Pungitore*, 506 F. App'x at 42. To the extent the AC alleges non-conclusory facts about the true reason for Lettieri's termination, it alleges that ADL was "making personnel cuts due to a reduction in funding from donors, as well as restructuring" at the time—conduct that would not support a retaliation claim.[13] AC ¶ 48.

Accordingly, the Court dismisses Lettieri's retaliation claims under the NYCHRL. *See, e.g., Harriram v. Fera*, No. 21 Civ. 3696 (RA), 2023 WL 2647856, at *9 (S.D.N.Y. Mar. 27, 2023) (dismissing NYCHRL retaliation claim where, *inter alia*, "plaintiff [did] not allege . . . that [defendant] was aware of any of [her] complaints"); *cf. Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 313 n.12 (2004) (no retaliation where, *inter alia*, no evidence that defendants aware of complaint prior to termination). And, because "[a] precondition to a valid aiding and abetting claim under the NYCHRL is a demonstration of a valid primary claim for discrimination or retaliation," the Court dismisses Lettieri's NYCHRL aiding and abetting claim, too. *See, e.g., Murray v. United Parcels Serv., Inc.*, No. 20 Civ. 1427 (MKB), 2022 WL 4468295, at *22 (E.D.N.Y. Sept. 25, 2022); *see Falchenberg v. N.Y. State Dep't of Educ.*, 338 F. App'x 11, 14 (2d Cir. 2009) (dismissing aiding and abetting claim where no primary violation of NYSHRL or NYCHRL).

---

[13] Other allegations in the AC, suggestive of permissible basis for adverse employment actions, are similarly in tension with its assertion that Lettieri's termination was retaliatory and the stated reason for it pretextual. These include that Straker was frustrated by Lettieri's in-office wedding planning, *see* AC ¶ 25.

### B.      Lettieri's Remaining Claims

The Court turns to the AC's remaining claims, under Title VII and the NYSHRL. Having dismissed the AC's claims under the more lenient NYCHRL standards, it follows that its claims to the same effect under Title VII and the NYSHRL's stricter standards also fail. *See, e.g.*, *Yost v. Everyrealm*, No. 22 Civ. 6549 (PAE), 2023 WL 2224450, at *14 (S.D.N.Y. Feb. 24, 2023); *Tortorici v. Bus-Tev, LLC*, No. 17 Civ. 7507 (PAC) (KHP), 2021 WL 4177209, at *14 (S.D.N.Y. Sept. 14, 2021) (dismissing NYSHRL claim where plaintiff could not sustain a claim under more liberal NYCHRL standard); *Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 454 (E.D.N.Y. 2013) ("[W]here a plaintiff cannot sustain a claim pursuant to the broader NYCHRL standard, the plaintiff's NYSHRL and Title VII claims also fail."); *see also Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 348 (S.D.N.Y. 2020) (dismissing NYSHRL aiding and abetting claim where no primary NYSHRL violation).

Accordingly, the Court grants defendants' motion to dismiss the AC's claims under Title VII[14] and the NYSHRL.[15]

---

[14] Title VII and the NYCHRL significantly differ as to the standards that must be met to prove a case of a hostile work environment based on gender or race. Title VII requires a showing of "severe and pervasive" conduct. *See Williams v. N.Y.C. Hous. Auth., et al.*, No. 21-1527, slip op. at 24–25 (2d Cir. Feb. 23, 2023); *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 66 (S.D.N.Y. 2020). There are no allegations in the AC that come close to so pleading.

[15] An amendment to the NYSHRL, effective October 11, 2019, has put in place a more lenient standard of liability for hostile work environment claims that has been likened to that of the NYCHRL. *See Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21 Civ. 02512 (CM), 2022 WL 524551, at *9 (S.D.N.Y. Feb. 22, 2022) (amendment removed "severe and pervasive" requirement). The amended NYSHRL applies to the AC's claims, which are based on conduct that postdates October 11, 2019. *See id.*; *cf. Wellner v. Montefiore Med. Ctr.*, No. 17 Civ. 3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019) (amendments do not apply to conduct predating amendment's effective date). The amended NYSHRL, like the NYCHRL, is to be construed "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed." *McHenry*, 510 F.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss in its

entirety. The dismissal is with prejudice.[16] The Clerk of Court is respectfully directed to

terminate all pending motions and close this case.

---

Supp. 3d at 68 (alteration in original) (citing N.Y. Exec. Law. § 300). The case law has not
definitively resolved whether the effect of the 2019 amendment is to make the NYSHRL's
standard *identical* to that of the NYCHRL—or merely closer to it. *See Yost*, 2023 WL 2224450,
at * 11. *Compare Arazi v. Cohen Bros. Realty Corp.*, No. 20 Civ. 8837 (GHW), 2022 WL
912940, at *16 (S.D.N.Y. Mar. 28, 2022) ("After that amendment, the standard for NYSHRL
aligns with the NYCHRL standard for claims that accrued on or after October 11, 2019."), *with
Wellner*, 2019 WL 4081898, at *5 n.4 (amendment brings NYSHRL "closer to" NYCHRL
standard). Relevant here, however, there is no basis to infer that the liability standards of the
NYSHRL as amended are more liberal than those of the NYCHRL. The dismissal of the AC's
NYCHRL claims thus requires the dismissal of its NYSHRL claims.

[16] The circumstances preceding this decision amply justify dismissal with prejudice. Lettieri
filed a substantially identical complaint, Dkt. 11-2, and amended complaint, Dkt. 11-3, in
another case she pursued in this District, before seeking its dismissal voluntarily. The AC also
represents an amendment of her initial complaint in this case. With each new complaint, Lettieri
was represented by common counsel, Zack Holzberg, Esq., of the Derek Smith Law Group. *See*
Dkts. 11-2 at 14, 11-3 at 17; AC at 17. And, in setting a deadline for Lettieri to amend, the Court
warned Lettieri that further opportunities to amend would not ordinarily be granted. Dkt. 11.
Further, Lettieri has not sought leave to amend her complaint in the event of a dismissal.
Moreover, given the basis for the Rule 12(b)(6) dismissal—that the AC does not allege facts that
come close to alleging discrimination, hostile work environment, aiding and abetting, or
retaliation under the NYCHRL—there is no basis to assume that additional investigation or
diligence would rectify these deficiencies. *See, e.g., Gallop v. Cheney*, 642 F.3d 364, 369 (2d
Cir. 2011) (upholding dismissal of complaint with prejudice given "the absence of any indication
that [plaintiff] could—or would—provide additional allegations that might lead to a different
result"; "no court can be said to have erred in failing to grant a request that was not made"); *Metz
v. U.S. Life Ins. Co. in City of N.Y.*, 662 F.3d 600, 603 (2d Cir. 2011) (no abuse of discretion in
dismissal of complaint with prejudice where plaintiff sought leave to amend "only in the final
sentence of her opposition to the motion to dismiss" and did not advance new factual allegations
that she would make in amended complaint on appeal); *Garnett v. RLX Tech. Inc.*, 632 F. Supp.
3d 574, 615 n.26 (S.D.N.Y. 2022) (same).

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: August 10, 2023
        New York, New York